IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL V. ROQUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 15 C 392 |
| v. ) | |
| ) | Magistrate Judge Daniel G. Martin |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael V. Roque ("Roque") seeks review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Roque asks the Court to reverse and remand the ALJ's decision, and the Commissioner seeks an order affirming the decision. For the reasons set forth below, the ALJ's decision is affirmed.

### I. BACKGROUND

Roque was born on March 30, 1949 and has a history of depression. Roque testified that he completed about three years of college and received an Associate's Degree in graphic arts. He previously worked as a financial service manager and a customer service representative at a commodities brokerage firm. Roque alleges he became totally disabled on September 18, 2009 because of major depression with psychosis. Roque's insured status for DIB purposes expired on December 31, 2011, which means Roque had to show he was disabled on or before that date in order to be eligible for DIB.

Under the standard five-step analysis used to evaluate disability, the ALJ found that Roque had not engaged in substantial gainful activity between September 19, 2009, the alleged onset date, through December 31, 2011, the date last insured (step one); his depression was a severe impairment (step two); but that his depression did not qualify as a listed impairment (step three).

The ALJ determined that Roque retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: no public contact, no more than occasional contact with co-workers and supervisors, and limited to 3-4 step simple, routine, and repetitive tasks on a sustained basis. Given this RFC, the ALJ concluded that Roque was unable to perform his past relevant work as a finance manager and customer service representative (step four). The ALJ also found that jobs existed in significant numbers in the national economy that Roque could perform considering his age, education, work experience, and residual functional capacity, including hand packer (38,000 jobs), laundry worker (16,000 jobs), and assembler (12,000 jobs) (step five). The Appeals Council denied Roque's request for review on November 17, 2014. Roque now seeks judicial review of the final administrative decision of the Acting Commissioner, which is the ALJ's decision. O'Connor-Spinner v. Astrue, 627 F.3d 614, 618 (7th Cir. 2010).

## II. DISCUSSION

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Act, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a) (2004); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially.

20 C.F.R. § 404.1520(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Clifford, 227 F.3d at 868 (quoting Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). An ALJ's credibility determination should be upheld unless it is patently wrong. Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010). A reviewing court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998).

The ALJ denied Roque's claim at step five, finding that Roque retains the residual functional capacity to perform a significant number of unskilled jobs in the national economy. Roque raises four main challenges to the ALJ's decision: (1) the ALJ improperly considered and weighed the opinion evidence in determining Roque's RFC; (2) the RFC limitation of 3-4 step simple, routine, and repetitive tasks does not adequately account for Roque's deficiencies in concentration, persistence, and pace (3) the jobs named by the vocational expert (VE) require the performance of more than 3-4 step tasks and the VE's testimony is inconsistent with the Dictionary of Occupational Titles (DOT); and (4) the ALJ erred in failing to consider Roque's stellar work history in her credibility assessment. The Court rejects each of these challenges and finds that the ALJ's decision is supported by substantial evidence.

### A. Weight Given to Opinion Evidence

Roque argues that the ALJ's RFC determination that he can perform 3-4 step simple, routine, and repetitive tasks is not supported by substantial evidence. In particular, Roque argues that the opinions of his psychiatric nurse practitioner, his social worker, the SSA's consulting examining psychiatrist, and his friend suggest that his work-related mental limitations significantly exceed those reflected in the ALJ's RFC finding. The Commissioner contends that the ALJ reasonably assessed the opinion evidence. The Court finds no error in the ALJ's weighing of the opinion evidence and substantial evidence supports the ALJ's mental RFC assessment.

On April 19, 2011, Terry A. Travis, M.D., a state agency psychologist, reviewed the record and completed a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment form. (R. 396-409, 410-413). Dr. Travis found Roque was moderately limited in his ability to maintain attention and concentration for extended periods and to work in coordination with or proximity to others without being distracted by them. (R. 410). Dr. Travis also found that Roque was not significantly limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. (R. 410-11). Dr. Travis diagnosed Roque with a fixed delusion and auditory verbal hallucinations. (R. 412). Dr. Travis noted that Roque's mental status examination on April 6, 2011 was normal except for a flat affect. Id. Dr. Travis concluded that Roque was able to function reasonably well and independently daily in all respects, learn instructions, relate appropriately, adapt to circumstances, and perform multistep tasks in a work setting that does not involve routine interaction with others. (R. 412).

The ALJ assigned "some weight" to the opinion of Dr. Travis, noting that Dr. Terry opined that Roque could do multistep tasks in a work setting that does not involve routine interactions with others. (R. 32, 412). The ALJ thought the evidence merited that Roque be further limited to 3-4 simple, routine, and repetitive tasks on a sustained basis in a working setting involving no public contact and no more than occasional contact with co-workers and supervisors. (R. 32). The ALJ reasonably relied on Dr. Terry's opinion in assessing Roque's mental RFC. Fiener v. Barnhart, 361 F.3d 442, 448 (7th Cir. 2004) (holding an ALJ may rely on opinions from state agency physicians); 20 C.F.R. § 404.1527(e)(2)(i) (stating "state agency medical and psychological consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation.").

Roque challenges the ALJ's decision to give no weight to the assessment of Roque's licensed clinical social worker, Nancy Grayson. Social worker Grayson submitted an undated Depression Residual Function Capacity Report. (R. 431-432). Grayson noted that Roque had been diagnosed with psychotic disorder. (R. 432). Grayson also determined that Roque had a disturbance of mood accompanied by full or partial depressive syndrome. (R. 431). Grayson checked boxes indicating that Roque had depressive syndrome characterized by the following: anhedonia or pervasive loss of interest in almost all activities, sleep distrubance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and hallucinations, delusions or paranoid thinking. (R. 431). In an undated Anxiety Residual Function Capacity Report, Grayson indicated that Roque exhibited generalized persistent anxiety accompanied by slow motor tension and apprehensive expectation. (R. 433). Grayson checked boxes indicating that Roque exhibited a persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation, experienced recurrent panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week, experienced recurrent obsessions or compulsions which are a source of

marked distress, and experienced recurrent and intrusive recollections of a traumatic experience which are a source of marked distress. Id. Grayson noted that Roque's panic attacks had "vastly improved with medication." Id. Grayson opined that Roque had marked restrictions of daily living, extreme difficulties in maintaining social functioning, extreme deficiencies of concentration, persistence or pace, and continual episodes of deterioration or decompensation. (R. 434).

The ALJ afforded no weight to the undated opinion of social worker Grayson, noting that Grayson is not considered an acceptable medical treatment source under 20 C.F.R. § 404.1513. (R. 32). Although a social worker is not an "acceptable medical source" according to 20 C.F.R. § 404.1513, this is not an adequate reason alone for rejecting an opinion from a social worker. Voigt v. Colvin, 781 F.3d 871, 878 (7th Cir. 2015). Evidence from "other sources," such as social workers, "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file" because they "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03, 2006 WL 2329939, at *2-3 (Aug. 9, 2006).

The ALJ offered several other reasons why Grayson's opinion should receive no weight, explaining that Grayson's opinion "is not well-supported by the claimant's treatment records." (R. 32). For example, Grayson found continual episodes of deterioration or decompensation, but the treatment records indicate only one episode of decompensation of extended duration in January 2011. The ALJ further discounted Grayson's opinion because it was inconsistent with Roque's self-reported daily activities, including his ability to live alone, independently care for his personal hygiene needs, handle funds, drive sometimes, use public transportation, walk his friend's dog, use the computer, read, visit others, and use a cellphone. (R. 32, 46-49, 225-232). Roque's ability to independently perform these daily activities is inconsistent with Grayon's opinion of marked restrictions of daily living. A marked restriction means "[a]n impairment seriously affects ability to function independently, appropriately and effectively." (R 434). In discounting Grayson's opinion,

the ALJ also considered that Roque's treatment for mental health issues consisted primarily of receiving care and medication management from his primary care doctor. (R. 32). The ALJ properly discounted Grayson's opinion due to the lack of consistency with the record as a whole. 20 C.F.R. § 404.1527(c)(4).

The ALJ's decision to discount Grayson's opinion about the severity of Roque's mental limitations is further supported by the lack of evidence and explanation concerning Grayson's asessment. The record does not reveal how often or how many times Roque saw Grayson. There are also no progress notes or other documentation from Grayson in the record to support her assessment. The mental RFC questionnaires completed by Grayson consisted of checking boxes and did not include a narrative citing to reasons and evidence supporting the findings. Larson v. Astrue, 615 F.3d 744, 750-51(7th Cir. 2010) (indicating that by itself a check-box form is weak evidence, especially where it is contradicted by other evidence in the record). The Court finds that substantial evidence supports the ALJ's decision to give social worker Grayson's opinion no weight.

Next, Roque argues that the ALJ improperly gave no weight to the opinion of Elsy Joseph, a certified nurse practitioner. On March 19, 2012, Nurse Joseph completed a Depressive Disorder questionnaire listing Roque's conditions as delusional disorder, psychosis, and depressive disorder. (R. 448-50). Nurse Joseph checked "yes" when asked if Roque had disturbance of mood accompanied by full or partial depressive syndrome. (R. 448). Nurse Joseph indicated that Roque's depressive syndrome was characterized by anhedonia or pervasive loss of interest in almost all activities, appetite disturbances with a change in weight, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and hallucinations, delusions or paranoid thinking. (R. 448). Nurse Joseph found that Roque had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, marked difficulties of concentration, persistence, or pace, and marked episodes of deterioration or decompensation. (R. 450). Specifically, Nurse Joseph noted:

-7-

> The severity of the buzzing sound in his head interferes in his social interaction with others. Pt stays to himself, unable to concentrate or focus well. Remains paranoid.
>
> * * *
>
> Pt remains delusional and paranoid. He is bothered by his buzzing sound/noise in his head which is more depressing. Pt. couldn't focus or concentrate well. It interferes in his daily activities. Unable to keep well without meds. Compliant with meds with fair result.

(R. 450-51).

Additionally, Nurse Joseph completed an Anxiety Related Disorder questionnaire on March 19, 2012 (R. 452-54). Nurse Joseph indicated that Roque exhibited generalized persistent anxiety accompanied by motor tension and vigilance and scanning. (R. 452). Nurse Joseph further indicated that Roque exhibited a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity or situation. Id. As she did in her assessment regarding Roque's depressive disorder, in assessing Roque's anxiety disorder, Joseph opined that Roque had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, marked deficiencies of concentration, persistence or pace, and marked episodes of deterioration or decompensation. (R. 453). Nurse Joseph remarked:

> Pt remains anxious and worried about the buzzing sound in his head which makes him paranoid and thinking of if he is every going to get better. Having difficulty with concentration and focusing. He has been complaint with medications with fair result.

(R. 454).

The ALJ first noted that Nurse Joseph is not an acceptable medical source as defined by the regulation but then discounted Joseph's opinion that Roque has marked deficiencies in concentration which interferes with his activities of daily living because it was not consistent with the evidence of record. The ALJ gave no weight to Joseph's opinion because it was inconsistent with the recent treatment notes, the results of his consultative examination, and Roque's self-

-8-

reported activities. (R. 32). The ALJ is correct that the most recent treatment notes from Joseph indicate that Roque's condition had improved and he was benefitting from his medication. (R. 530-31, 534-35). On June 18, 2012, Roque's Risperidone dose was increased to 3 mg. At his next appointment on August 12, 2012, Roque stated "I am very very happy" and Joseph noted that Roque was "doing much better on [his] current meds regimen." (R. 531). Roque denied hearing the "buzzing sound" and denied any disturbance by the "electrical interference." (R. 530). The AlJ also noted that Joseph's opinion of marked deficiencies in concentration which interfere with his daily activities was contradicted by the results of a consultative examination of Roque. On April 6, 2011, Dr. Herman Langer, M.D., performed a consultative examination and found that Roque "is able to take care of his basic activities of daily living." (R. 393). The ALJ pointed out that Roque's self-reported activities of maintaining a residence on his own, going shopping, visiting others, using a computer and a cell phone, reading, and handling his own funds were inconsistent with Joseph's assessment that Roque experiences marked deficiencies in concentration that interfere with his daily activities. (R. 32). These reasons substantially support the ALJ's decision to give no weight to nurse Joseph's opinion.

Lastly, Roque argues that the ALJ improperly gave no weight to Roque's friend's opinion of Roque's impairments. On March 26, 2011, Mary Jane Cutt completed a Third Party Function Report. (R. 213-220). In the report, Cutt stated that she has known Roque since 2009 and that they spend about four to five hours together every day. (R. 213). Cutt reported that Roque has difficulty focusing for even a short time on activities and difficulty sleeping which causes fatigue and a short attention span. Id. Cutt stated that Roque is able to handle his personal care but it takes him longer than the average person. (R. 214). Cutt also stated that Roque is able to prepare his meals, wash dishes, shop for groceries three times a week, carry groceries, go outside every day, use public transportation, go to stores alone, handle money, watch television, walk two miles, call his children several times a week, pay attention for 20 to 35 minutes, follow simple written

directions, and follow spoken instructions. (R. 215-219). Cutt indicated that Roque does not handle stress and changes in routine well. (R. 219). Finally, Cutt wrote that Roque thinks he hears a former neighbor speaking to him at different times and mostly at night. Id.

The ALJ mentioned the Third Party Function Report submitted by Cutt but gave it "no weight" because "Cutt is not a treating source and, as the claimant's friend, [h]as a personal bias in favor of the claimant." (R. 32). The ALJ's reasoning on this point is flawed. By definition, lay witnesses do no have medical training, but the regulations require ALJs to consider their statements. Social Security regulations provide that "[i]n addition to evidence from the acceptable medical sources . . . [ALJs] may also use evidence from other sources to show the severity of [a claimant's] impairments and how it affects [a claimant's] ability to work. Other sources include . . . nonmedical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy)." 20 C.F.R. § 404.1513(d)(4); see also 20 C.F.R. § 404.1545(a)(3)(stating that "[w]e will consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.").

The ALJ also erred in according no weight to Cutt's statement simply because she "has a personal bias in favor of the claimant." Garcia v. Colvin, 741 F.3d 758, 761 (7th Cir. 2013) (rejecting "the implication . . . that if a plaintiff or a defendant (or a relative of either–or fiancée) testifies in a case, the testimony must automatically be discounted for bias . . . The administrate law judge should have made clear whether he believed the fiancée's testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief."). "To be sure, the ALJ can consider the third party's relationship with the claimant and corresponding motivation or bias, but the ALJ cannot discredit the third party's statement solely for that reason, or the statements of family members would never by given credit." Kandt v. Astrue, 2013 WL 615249, at *5 (D. Kan. Feb. 19, 2013); Morgan v. Barnhart, 142 Fed. Appx. 716, 731 (4th Cir. 2015)

(stating "if family members' evidence was automatically worthless, it would be an odd exercise in futility to even allow them to fill out questionnaires and submit them into evidence."). The ALJ's dismissal of Cutt's lay opinion solely because she was not a treating source and because of her personal relationship with Roque was error.

Nevertheless, the ALJ's insufficient consideration of Cutt's statement is harmless because Cutt's observations were essentially redundant of other evidence in the record which the ALJ otherwise adequately addressed. Brooks v. Chater, 91 F.3d 972, 980 (7th Cir. 1996); Herron v. Shalala, 19 F.3d 329, 337 (7th Cir. 1994); Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993). Cutt stated that Roque has difficulty focusing, concentrating and sleeping, does not handle stress and changes in routine well, and thinks he hears a former neighbor speaking to him. In the decision, the ALJ noted that Roque had benefitted from his medication regime and his mental condition had improved. (R. 32). For example, at his June 18, 2012 appointment, Roque denied hearing voices. (R. 534). Roque also stated that he was sleeping good with Ambien. Id. Two months later, Roque denied hearing the buzzing sound he had claimed to hear and denied any disturbance by the "electrical interference." (R. 530). At that time, Roque stated that he did not feel depressed and was sleeping good with Ambien. Id. Moreover, the ALJ accounted for Roque's moderate difficulties in concentration and persistence by limiting Roque to 3-4 step simple, routine, and repetitive tasks with no public contract and no more than occasional contact with co-workers and supervisors. (R. 30). Finally, the ALJ relied on Dr. Travis' opinion, who explicitly considered Cutt's statements that Roque has trouble focusing, hears voices, and does not handle stress and change well. (R. 32, 408). Thus, the ALJ indirectly took Cutt's statements into account by adopting limitations suggested by Dr. Travis who was aware of and discussed Roque's trouble focusing, hearing voices, and not handling stress and change well. Accordingly, Roque has not established that the ALJ's failure to sufficiently consider Cutt's statement was harmful error.

### B. Moderate Limitations in Concentration, Persistence, or Pace

Roque contends that the ALJ failed to adequately account for his moderate limitations in maintaining concentration, persistence, or pace in her assessment of his RFC and into her questioning of the VE at step five of her analysis. The Commissioner argues that the ALJ's RFC and hypothetical to the VE sufficiently accounted for Roque's moderate limitations in maintaining concentration, persistence, or pace as expressed by the state agency psychologist who translated his findings into an RFC. The Court finds no error in the ALJ's handling of Roque's limitations on concentration, persistence and pace in fashioning the RFC and hypothetical.

At step three of the sequential evaluation process, the ALJ determined that Roque's depression was severe and that Roque experiences moderate limitations in concentration, persistence, or pace. (R. 29). The ALJ relied on the opinion by the state agency psychological consultant, Dr. Terry A. Travis, who found that Roque could perform "multistep tasks in a work setting that does no[t] involve routine interactions with others." (R. 29, 32, 412). The ALJ then determined that Roque has the residual functional capacity to perform a full range of work at all exertional levels, but with his non-exertional limitations he was limited to 3-4 step simple, routine, and repetitive tasks on a sustained basis with no public contact and no more than occasional contact with co-workers and supervisors. (R. 30, 51). Based on the VE's testimony, the ALJ determined that Roque is capable of performing a significant numbers of jobs in the national economy, such as hand packer, laundry worker, and assembler. (R. 33-34).

Generally, "[b]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." Yurt v. Colvin, 758 F.3d 850, 857 (7th Cir. 2014). The Seventh Circuit has "suggest[ed] that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." O'Connor-Spinner, 627 F.3d at 619; Indoranto v. Barnhart, 374 F.3d 470, 474

(7th Cir. 2004) (stating "[i]f the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."). "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." Varga v. Colvin, 794 F.3d 809, 814 (7th Cir. 2015); Stewart v. Astrue, 561 F.3d 679, 684 (7th Cir. 2009) (stating that an ALJ's hypothetical question to the VE "must account for documented limitations of 'concentration, persistence, or pace.'"). The Seventh Circuit has overlooked an ALJ failure to expressly include a "concentration, persistence, or pace" limitation in the hypothetical where the VE's familiarity with the claimant's mental limitations can be assumed from the fact that the VE "independently reviewed the medical record or heard testimony directly addressing those limitations." O'Connor-Spinner, 627 F.3d at 619; Varga, 794 F.3d at 814; Yurt, 758 F.3d at 857 Simila v. Astrue, 573 F.3d 503, 521 (7th Cir. 2009).

In this case, Dr. Travis performed a mental RFC and noted that Roque is moderately limited in two areas related to concentration and persistence: (1) maintaining attention and concentration for extended periods and (2) working in coordination with or proximity to others without being distracted by them. (R. 410). Dr. Travis proceeded to provide a functional analysis of Roque's abilities which indicated that Roque "is able to learn instructions. He can relate appropriately. He is able to adapt to circumstances. He is able to do multistep tasks in a work setting that does no[t] involve routine interactions with others." (R. 412). The AL relied on Dr. Travis when determining that Roque had moderate difficulties with concentration, persistence, or pace but retained the ability to carry out 3-4 step simple, routine, and repetitive task on a sustained basis with no public contact and no more than occasional contact with co-workers and supervisors. (R. 30, 51). The ALJ's hypothetical to the VE limited the individual to "three-to four-step simple, repeated, routine tasks [and] cannot come in contact with the public for work-related purposes, but occasional contact with coworkers and supervisors." (R. 51).

The Seventh Circuit has held that where a medical opinion translates a claimant's functional limitations arising from mental impairments into an RFC assessment, the ALJ does not error in relying on that assessment in her questions to the VE. Johansen v. Barnhart, 314 F.3d 283, 289 (7th Cir. 2002). In Johansen, the Seventh Circuit concluded that an RFC limiting a claimant to repetitive, low-stress work adequately accommodated his moderate limitations in maintaining a regular schedule and completing a normal workday and workweek without interruptions from psychologically-based symptoms, where the consulting physician opined that the claimant's limitations allowed him to perform repetitive, low-stress work. Id. at 288-89.

Because consulting psychologist Dr. Travis (affirmed by Dr. Mehr) opined that Roque can maintain the attention, concentration, and persistence required to complete multistep tasks in a work setting that does not involve routine interactions with others this case is like Johansen. The ALJ reasonably relied on Dr. Travis' opinion to further translate Roque's mental impairments into an RFC and hypothetical. The ALJ's hypothetical limiting an individual to 3-4 step simple, routine, repetitive tasks with no public contract and only occasional contact with co-workers and supervisors captured Roque's moderate limitations in maintaining attention and concentration for extended periods and working in coordination with or in proximity to others without being distracted by them. The ALJ's failure to note more specific limitations in her question to the VE was not error. Milliken v. Astrue, 397 Fed.Appx. 218, 221-222 (7th Cir. 2010) (stating "[h]ere, the ALJ's hypothetical to the VE was limited to unskilled work and thus incorporated [the doctor's] assessment that given [claimant]'s mental limitations, [he] could still perform unskilled work. Accordingly, we conclude that the ALJ adequately accounted for [claimant's] limitations in concentration, persistence, and pace."). With Dr. Travis' medical translation, the hypothetical to the VE properly reflected the ALJ's findings and RFC determination, which were supported by substantial evidence in the record. Adams v. Astrue, 880 F.Supp.2d 895, 912 (N.D. Ill. 2012) (holding where "a medical expert 'translated an opinion of the claimant's medical limitations into an RFC assessment' an ALJ may rely upon that

translation."). Accordingly, the ALJ adequately addressed Roque's moderate limitations as to concentration, persistence, or pace by relying on Dr. Travis' opinion. Even if the language used by the ALJ was somehow insufficient to alert the VE to the full scope of Roque's moderate limitations in concentration, persistence, or pace, the VE testified on the record that he had independently reviewed the entire exhibit file. (R. 50). It can therefore be assumed that the VE had knowledge of limitations that were not specifically included in the hypothetical but were included elsewhere in the record.

### C. Conflict Between the VE's Testimony and the DOT

Roque next argues that the ALJ erred in relying on the VE's testimony because the testimony was inconsistent with the Dictionary of Occupational Titles ("DOT"). Specifically, Roque asserts that there was a conflict between the ALJ's limiting Roque to 3-4 step tasks and the three jobs identified by the ALJ which cannot be performed in 3-4 steps according to their descriptions in the DOT. The Court finds no conflict between the VE's testimony and the DOT in this case.

An ALJ is required to "investigate and resolve any apparent conflict between the VE's testimony and the DOT." Weatherbee v. Astrue, 649 F.3d 565, 570 (7th Cir. 2011). "[B]ecause SSR 00-4p imposes an affirmative duty *on the ALJ* to inquire into and resolve apparent conflicts [between the VE's testimony and the DOT], a claimant's failure to raise a possible violation of SSR 00-4p at the administrative level does not forfeit the right to argue later that a violation occurred." Overman v. Astrue, 546 F.3d 456, 463 (7th Cir. 2008). Nevertheless, if a claimant's attorney does not identify the conflicts at the time of the hearing, then the plaintiff must show that "the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00-4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." Id. "When there is an apparent conflict, ALJs are required to obtain reasonable explanations for the conflict." Weatherbee, 649 F.3d at 570.

Here, the ALJ specifically asked the VE whether his testimony was consistent with the DOT, and the VE testified that it was. (R. 51). The ALJ invited questions from Roque's attorney, and no question was raised as to any conflict between the VE's testimony and the DOT. Id. Because the VE's testimony regarding the consistency of his testimony with the DOT went unchallenged, the ALJ was entitle to rely on the VE's testimony unless the conflict Roque now identifies was an "apparent conflict." Overman, 546 F.3d at 463. The ALJ asked the VE to identify jobs that "an individual of the claimant's age, education and work experience who is limited to three-to four-step simple, repeated, routine tasks, cannot come in contact with the public for work-related purposes, but occasional contract with coworkers and supervisors" with no exertional restrictions could perform. (R. 50-51). The VE replied that such an individual could perform the jobs of hand packer (DOT 920.587-018), laundry worker (DOT 361.687-018), and assembler (DOT 806.684-010).

Roque has failed to demonstrate a conflict or apparent conflict between the VE's testimony and the DOT. Roque argues that the hand packer, laundry worker, and assembler jobs identified by the VE require the performance of more than 3-4 steps. For example, Roque maintains that the DOT's description for hand packager requires the performance of as many as 31 steps, which he identifies by inserting bold numbers into the DOT description:

> Packages materials and products manually, performing any combination of following duties **[1]** cleans packaging containers. **[2]** Lines and **[3]** pads crates and **[4]** assembles cartons. **[5]** Obtains and **[6]** sorts product. **[7]** Wraps protective material around product. **[8]** Starts, **[9]** stops, and **[10]** regulates speed of conveyor. **[11]** Inserts or **[12]** pours product into containers or **[13]** fills containers from spout or chute. **[14]** Weighs containers and **[15]** adjusts quantity. **[16]** Nails, **[17]** glues, or **[18]** closes and seals containers. **[19]** Labels containers, container tags, or products. **[20]** Sorts bundles or filled containers. **[21]** Packs special arrangements or selections of product. **[22]** Inspects materials, products, and containers at each step of packaging process. **[23]** Records information, such as weight, time, and date packaged. **[24]** May stack, **[25]** separate, **[26]** count, **[27]** pack, **[28]** wrap, and **[29]** weigh bakery products and be designated Bakery Worker (bakery products). **[30]** May apply preservative to aircraft and spaceship parts, **[31]** package parts for shipment, and be designated Wrapper and Preserver (aircraft mfg.)....

Based on similar interpretations for laundry worker and assembler, Roque argues that the VE's testimony which accounted for 3-4 step tasks is inconsistent with the DOT's descriptions.

Roque provides no authority in support of his interpretation of the DOT's descriptions for hand packager, laundry worker, and assembler. Two recent district court cases have decided this same issue in favor of the Commissioner. Hilton v. Commissioner of Social Security, 2016 WL 561364, at *4-6 (M.D. Fla. Feb. 12, 2016); Baumm v. Colvin, 2015 WL 4723622, at *4-5 (E.D. N.C. Aug. 10, 2015). In both of these decisions, the claimants argued that the DOT descriptions of hand packager and laundry worker required the claimants to perform more steps than accounted for by the RFC and the VE's testimony. The courts determined that the claimants' argument improperly conflated the number of tasks identified in the DOT descriptions with the number steps required to perform each task. Hilton, 2016 WL 561364, at *6; Baumm, 2015 WL 4723622, at *4 (holding plaintiff "conflates the number of duties included in the description with the number of steps required for each duty. Plaintiff's RFC only includes a limitation on the number of steps involved in each task, not the number of duties in a job."). The Baumm court held that "the DOT does not specify how many steps are involved in the duties listed in the description." Baumm, 2015 WL 4723622, at *4. Further, the DOT does not state a hand packager or laundry worker is required to perform all of the tasks listed. Id; Hilton, 2016 WL 561364, at *6. Here, the DOT descriptions at issue involve the performance of "any combination" of duties (hand packager and laundry worker) and "any combination" of repetitive tasks (assembler). "Therefore, even if the tasks identified in the DOT descriptions are construed as steps, an individual may still be capable of performing the jobs identified by the VE since any one of those jobs may only require the performance of [four] or fewer tasks." Hilton, 2016 WL 5611364, at *6. There is no conflict between the VE's testimony and the DOT in this case.

### D. Work History

As his final contention, Roque asserts that the ALJ erred in failing to consider his lengthy and consistent work history. Roque's work history indicates that he worked consistently between 1979, the year he left college, and 2006. A "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Hill v. Colvin, 807 F.3d 862, 868 (7th Cir. 2015). "But work is just one factor among many, and it is not dispositive." Loveless v. Colvin, 810 F.3d 502, 508 (7th Cir. 2016). An ALJ's silence with respect to a claimant's work history does not require reversal when the credibility determination is otherwise supported by substantial evidence. Id. Because the ALJ's credibility finding is not otherwise challenged, the ALJ's failure to mention Roque's work history does not render the credibility determination patently wrong.

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [18] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Michael V. Roque.

**E N T E R:**

*Daniel G. Martin*

**Daniel G. Martin**
**United States Magistrate Judge**

Dated: **March 22, 2016**